IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PETER MAKUSI OTEMBA OWUOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv1166-MEF |
| | ) | (WO) |
| U.S. DEPT. OF HOMELAND | ) | |
| SECURITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff, Peter Makusi Otemba Owuor ("Owuor"), brings this *pro se* action alleging violations of his constitutional rights pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)*,* and 42 U.S.C. § 1983.[1]  In his complaint, as amended, Owuor alleges that he was "physically tortured" by Immigration and Customs Enforcement ("ICE") agents employed by the U.S. Department of Homeland Security.  He also alleges that criminal charges were brought against him in retaliation for his filing of a federal tort claim against the same ICE agents.  Owuor names as defendants the U.S. Department of Homeland Security; Blake Diamond, a senior ICE special agent; David Henderson, also a senior ICE special agent; A.J. Taylor, supervisory correctional officer for

---

[1] A "*Bivens* action" is a suit for damages against a federal actor who, acting in his or her individual capacity under color of federal law, is alleged to have violated the plaintiff's constitutional rights.  *Bivens*, 403 U.S. at 397; *see Butz v. Economou*, 438 U.S. 478, 498-99 (1978).  An action under 42 U.S.C. § 1983 is a suit against a *state* actor who acting in his or her individual capacity under color of *state* law, is alleged to have violated the plaintiff's constitutional rights.  *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978).  The standards of liability in a *Bivens* action are similar to the standards under 42 U.S.C. § 1983.  *See Butz*, 438 U.S. at 500.

the Montgomery, Alabama, Municipal Jail (where the incident involving the ICE agents is alleged to have taken place); the City of Montgomery, Alabama; and Bobby Bright, former mayor of Montgomery. *Doc. Nos. 1, 22, and 24.*[2] For the alleged violations of his constitutional rights, Owuor seeks declaratory and injunctive relief as well as compensatory and punitive damages "in no event less than $252,210,000.00." *See Doc. No. 24 at 26*; *Doc. No. 1 at 6.*

The defendants filed special reports with supporting evidentiary materials addressing Owuor's claims. *Doc. Nos. 42 and 50.* Pursuant to the orders entered in this case, the court deems it appropriate to construe the defendants' special reports as motions for summary judgment. *See Doc. No. 52.* Upon consideration of these motions, the evidentiary materials filed in support thereof, and Owuor's response, the court concludes that the defendants' motions for summary judgment should be granted.

## I.   STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. 56(a) ("The court

---

[2] References to document numbers are to those assigned by the Clerk in the instant action (Civil Action No. 2:09cv1166-MEF) or, where applicable, in Owuor's criminal proceedings (Case No. 2:08cr149-WKW-TFM). Page references in the pleadings are to those assigned by CM/ECF.

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to Owuor to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark*, Inc., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *See Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Owuor is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed.R.Civ.P. 56(e).   "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Anderson*, 4767 U.S. at 249-50.

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to

4

be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Owuor fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Celotex*, 477 U.S. at 322.

## II.    DISCUSSION

### A.    Relevant Facts[4]

On May 23, 2008, Owuor was in the holding area of the Montgomery Municipal Jail, in the custody of a city police officer, waiting to be booked on outstanding state warrants.  *Case No. 2:08cr149-WKW, Doc. No. 46 at 17; Doc. No. 47 at 3-8; Doc. No. 56 at 2-4.*  Also in the holding area were senior ICE special agents Blake Diamond and David Henderson,

---

[4] These facts are taken from the transcript of the hearing on Owuor's suppression motion and motion to dismiss the indictment (*Doc. No. 46*), the Magistrate Judge's Recommendation *(Doc. No. 47)*, and the District Court's Memorandum Opinion and Order (*Doc. No. 56*) in *United States v. Owuor*, Case No. 2:08cr149-WKW, 2009 WL 1439361 (M.D. Ala. May 20, 2009).

who were booking two individuals for immigration violations.[5]  *Doc. No. 46 at 9-13 and 64.*
The ICE agents overheard Owuor talking to the city police officer and noticed that Owuor
had a strong accent.  *Id. at 16.*  The ICE agents and Owuor entered into a conversation.  *Id*.
During the conversation, the ICE agents asked Owuor where he was from.  *Id*.  Owuor stated
that he was a United States citizen and that he was born in Atlanta, Georgia.  *Id. at 16-17
and 66.*  When asked about his accent, Owuor stated he had acquired it through his extensive
travels.  *Id. at 66.*  Agent Henderson then obtained a copy of Owuor's arrest report from a
city police officer and noticed that no social security number was listed on the report.  *Id.
at 17 and 67.*  The agent then asked Owuor for his social security number, and Owuor
provided it.  *Id. at 17.*

    Shortly thereafter, the ICE agents returned to their office and contacted the Social
Security Administration.  *Doc. No. 46 at 18.*  The agents learned that the social security
number Owuor had provided belonged to someone else.  *Id.*  The agents also ran Owuor's
name through the National Crime Information Center ("NCIC").  *Id. at 69.*  The NCIC
report showed that Owuor had a criminal record and listed Kenya as his country of birth.
*Id*.  The agents then returned to the Montgomery Municipal Jail and interviewed Owuor,
who was in handcuffs, in a visitation room.  *Id. at 18.*  The agents asked Owuor about his
citizenship, and he continued to insist he was a U.S. citizen.  *Id*.  Owuor explained that his
father was from Kenya, but that his mother was a U.S. citizen.  *Id. at 18-19.*  He also told

---

[5] ICE uses the Montgomery Municipal Jail as a contract detention center.  *See Doc. No. 46
at 10.*

the agents that he traveled on a U.S. passport, but that it was issued under a different name. *Id. at 19.* This admission prompted Agent Diamond to give Owuor a *Miranda*[6] warning. *Id. at 9 and 72.*

After he was Mirandized, Owuor refused to answer further questions. *Doc. No. 46 at 20.* Because jail officials needed the visitation room for some other purpose, the ICE agents escorted Owuor from the visitation room to the end of the hallway in the main part of the jail, in order to fingerprint him. *Id. at 20 and 73.* The ICE agents removed Owuor's handcuffs and were attempting to take his fingerprints when he began resisting and struggling with the agents. *Id. at 58-59.* The ICE agents then used an arm bar takedown (a standard law enforcement technique) to bring Owuor to the floor and gain control. *Id. at 49-50 and 58-59.* Several other correctional officers rushed to assist the ICE agents in subduing and handcuffing Owuor. *Id. at 59.* The entire incident was captured on videotape by the jail's surveillance cameras. *Id*. at 60. After Owuor was subdued, the ICE agents left the jail and had no further contact with him. *Id.*

On July 28, 2009, a grand jury siting in the Middle District of Alabama indicted Owuor for falsely representing himself to be a United States citizen, in violation of 18 U.S.C. § 911, and for making a false statements, in violation of 18 U.S.C. § 1001(a)(2). The charges were based on Owuor's statements to the ICE agents during the interview in the visitation room at the Montgomery Municipal Jail on May 23, 2008. Before his trial on

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

those charges, Owuor filed a motion to dismiss the indictment and a motion to suppress all his statements to the ICE agents.[7]  *Doc Nos. 29 and 30.*  In his motion to dismiss the indictment, Owuor argued that his prosecution was barred under the Due Process Clause of the Fifth Amendment because, during the May 23, 2008, altercation at the Montgomery Municipal Jail, the ICE agents had "engaged in misconduct that is so shocking that it violates the universal sense of justice and fundamental fairness mandated by the due process clause." *Doc. No. 30 at 1.*  More particularly, Owuor alleged that "Agents Blake Diamond and David Henderson: 1) tortured Mr. Owuor; 2) broke Mr. Owuor's index finger; 3) dislocated Mr. Owuor's shoulder and 4) tore Mr. Owuor's shoulder muscle during an illegal interrogation." *Id*.  In his motion to suppress, Owuor argued that his statements to the ICE agents were unconstitutionally obtained.  *Doc. No. 29.*  Specifically, Owuor argued that (1) the ICE agents' initial questioning, while he was being booked into the jail, violated his Fourth Amendment rights because it was not supported by reasonable suspicion and (2) the later questioning by the ICE agents, in the visitation room at the jail, violated his Fifth Amendment rights against self-incrimination because the agents did not give him a *Miranda* warning before he made the statements he was seeking to suppress. *Id. at 3-6.*  As he did in his motion to dismiss the indictment, Owuor also argued in his suppression motion that his statements were the product of physical force, "obtained during the agents' torture of the defendant," in violation of the Due Process Clause of the Fifth Amendment.  *Doc. No. 29*

---

[7] Owuor was represented by counsel throughout the criminal proceedings. *Docs Nos. 4 and 17.*

8

*at 7.*

Magistrate Judge Terry F. Moorer held an evidentiary hearing on Owuor's motions on December 15, 2008. *Doc. No. 46.* Owuor was represented by counsel at the hearing. The court heard testimony from Agents Diamond and Henderson; Mary Brantley, the assistant warden at the Montgomery Municipal Jail; Steven Smith, second shift supervisor at the jail; Montgomery Police Officer Phoukham Sichanthavong; and inmate Willie Robinson. *Id.* The court also reviewed other evidence including Owuor's medical records and the videotape from the jail's surveillance cameras showing the altercation between the ICE agents and Owuor. *Doc. No. 47 at 7-8.*

After considering all the evidence, briefs, arguments, exhibits, and applicable law, Judge Moorer entered a recommendation that Owuor's motions be denied. *Doc. No. 47.* With regard to Owuor's claims that the ICE agents used excessive force in violation of the Due Process Clause, Judge Moorer found:

> The ICE agents admit to an arm bar takedown of Owuor.... The Court has viewed the video clip and sees no conduct, outrageous or otherwise, which warrants dismissal of the indictment or suppression of the evidence. Rather, the conduct is consistent with the testimony of all parties including Supervisor Smith who said he did not witness any excessive force being applied to Owuor, but only the force necessary to bring him into compliance. Thus, the Court concludes the officers used no more force than necessary to subdue Owuor."

*Id. at 14-15* (internal citations to transcript pages omitted).[8]

---

[8] With regard to Owuor's allegations that his interrogation was unconstitutional, Judge Moorer found that the ICE agents' "initial contact with Owuor, including the conversation
(continued...)

Owuor filed objections to the recommendation and requested that the District Court conduct a supplemental evidentiary hearing. *Doc. No. 48.* District Judge W. Keith Watkins conducted a de novo review of the record, but found that a supplemental evidentiary hearing was unnecessary because credibility determinations were not dispositive of the court's ruling on Owuor's suppression motion and a de novo review of the videotape was sufficient to resolve Owuor's motion to dismiss the indictment. *Doc. No. 56 at 1.* By Memorandum Opinion and Order dated May 20, 2009, Judge Watkins adopted Judge Moorer's recommendation. *Id. at 20.* Judge Watkins's Memorandum Opinion and Order added certain "supplemental reasoning to fairly address [Owuor's] objections" to the recommendation. *Id. at 2.* With regard to Owuor's claim that the ICE agents had used excessive force against him, Judge Watkins specifically held that "[t]here is no evidence of conduct that is so rare and outrageous as to violate 'fundamental fairness, shocking to the universal sense of justice mandated by the due process clause of the fifth amendment.'" *Id. at 17-18* (internal quotes and citations omitted). Judge Watkins explained:

> The videotape, confirming the testimony, shows Mr. Owuor resisting what appears to be the Agents' attempt to obtain fingerprints. The Agents' testimony, uncontradicted by testimony or videotape, was that he became aggressive. (E.g., Hr'g Tr. 58-59 (Agent's testimony that Mr. Owuor started "resisting [the Agents] and attempting ... what seemed like he was about to

---

[8](...continued)

concerning citizenship, was authorized under 8 U.S.C. § 1357 and was no more than a police-citizen encounter not involving the Fourth Amendment." *Doc. No. 47 at 11.* He also found that the ICE agents' questioning of Owuor in the jail concerning his citizenship status was not subject to *Miranda* warnings and did not violate Owuor's Fifth Amendment privilege against self-incrimination. *Id. at 11-13.*

fight," that he was "fighting the whole time, yelling," and that he "would not comply with instructions to place his hands behind his back"). The Agents appear to have handled the altercation by putting Mr. Owuor on the floor efficiently, with a clean move.

Mr. Owuor's supplemental argument, that the proper procedure for a handling a detainee who refuses to be fingerprinted is a court order and not force, assumes that the Agents applied inappropriate force solely to quell Mr. Owuor's resistance to fingerprinting. For one, it is not apparent, even if that were the case, that such conduct by the Agents would amount to outrageous conduct justifying the dismissal of the indictment. Additionally the argument assumes the very conclusions the court must reach on its own assessment of the videotape. Mr. Owuor did not merely stand and refuse to be fingerprinted. He moved in resistance to the fingerprint away from the officers and became aggressive toward them.

*Doc. No. 56 at 18-19* (footnotes and some internal citations to record omitted).[9]

Owuor filed a response to Memorandum Opinion and Order (*Doc. No. 57*), which the district court construed as a motion for reconsideration then denied (*Doc. No. 60*).

Owuor's criminal case proceeded to trial, and the jury returned a verdict of guilty on all counts. *Doc. No. 90*. The district court entered final judgment against Owuor and sentenced him to 10 months of imprisonment, one year of supervised release, and a $200 special assessment. *Doc. No. 123*. Owuor then filed a notice of appeal to the Eleventh

---

[9]Judge Watkins further held that "the Agents' conduct did not otherwise violate due process during their interview with Mr.Owuor[.]" *Doc. No. 56 at 16*. Judge Watkins held that the agents' initial questioning of Owuor about his immigration status "did not constitute an independent Fourth Amendment seizure, and thus the Recommendation's conclusion on this claim is due to be adopted." *Id*. at 7 (footnote omitted). On the self-incrimination claim, Judge Watkins explained that "[e]ven assuming, arguendo, that *Miranda* warnings should have been given before [Owuor] answered questions in the interview room, the resulting statements are not evidence of a prior crime, but are themselves a new crime – that of false statements (under either charged offense) – and thus not subject to the exclusionary rule." *Id*.

11

Circuit.[10]   *Doc. No. 124*.   On September 24, 2010, the appellate court affirmed Owuor's

conviction and sentence.   *United States v. Owuor*, 397 Fed. App'x 572 (11th Cir. 2010).

**B.       Claims Against Department of Homeland Security**

Owuor seeks to name the U.S. Department of Homeland Security as a defendant in

this action.  However, under the doctrine of sovereign immunity, a *Bivens* action will not lie

against the United States, agencies of the United States, or federal agents in their official

capacity.  *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *Young v. SouthTrust Bank, N.A.*,

51 F.Supp.2d 1274, 1281 (M.D. Ala. 1999).  *See also United States v. Testan*, 424 U.S. 392,

399 (1976) (the United States of America, as sovereign, is immune from suit except to the

extent it consents to be sued).  Because Owuor has no *Bivens* cause of action against the

U.S. Department of Homeland Security, his claims against this defendant are due to be

dismissed.

**C.       Official Capacity Immunity of the Federal Defendants**

To the extent Owuor's *Bivens* action is against defendants Blake Diamond and David

Henderson in their official capacities as senior ICE special agents and seeks monetary

damages, it is basically a claim against the United States; however, the United States has not

waived its sovereign immunity for a *Bivens* action.  *Meyer*, 510 U.S. at 484-86; *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989); *Owens v. Fulton County*, 877 F.2d 947, 951

---

[10] On appeal, Owuor argued that (1) the district court erred in denying his motion to suppress
his statements to the ICE agents because he was not given a *Miranda* warning until after those
statements were made and (2) the district court erred by giving an "*Allen* charge" to the jury.

n.5 (11th Cir. 1989).  As a result, a *Bivens* action brought against any federal official acting in his official capacity is barred by the doctrine of sovereign immunity.  *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70-72 (2001).  Therefore, to the extent that Owuor sues defendants Diamond and Henderson in their official capacities, they are immune from monetary damages.

**D.    Collateral Estoppel Bars Owuor's Complaints about Excessive Force by the Federal Defendants**

Owuor claims that he was "physically tortured" by defendants Blake Diamond and David Henderson during the May 23, 2008, altercation at the Montgomery Municipal Jail, in violation of the Due Process Clause of the Fifth Amendment.  *Doc. No. 1 at 2*. Specifically, he contends that when the two ICE agents ostensibly attempted to obtain his fingerprints in the jail hallway, they bent and broke his finger, punched his rib cage, and "violently tackled" him, dislocating his shoulder, spraining his ankle, and tearing his shoulder muscle in the process.  *Id. at 5*; *see also Doc. No. 61 at 10-12*.  He maintains that even if he resisted the agents' attempt to fingerprint him, the agents used excessive force in getting him to comply.  *Id. at 11*.

As a federal pretrial detainee at the time of the incident, Owuor's excessive force claim is analyzed under the Due Process Clause of the Fifth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see also Daniel v. U.S. Marshall Service*, 188 Fed.

App'x 954, 961-61 (11th Cir. 2006).  The Due Process Clause of the Fifth Amendment[11]

protects pretrial detainees from the use of force that "shocks the conscience," which is force

that is applied "maliciously and sadistically for the very purpose of causing harm."  *Danley*

*v. Allen*, 540 F.3d 1298, 1306-07) (11th Cir. 2008), *overruled on other grounds*, *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009).  The use of force does not "shock the conscience" if it is applied

"in a good-faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1,

7 (1992).  The same "shocks the conscience" substantive due process standard governs all

of these excessive force claims.  *See Rochin v. California*, 324 U.S. 165, 209-210 (1952)

(reversing criminal drug conviction because the incriminating evidence was obtained by

forcibly pumping the defendant's stomach); *United States v. Russell*, 411 U.S. 423, 431-32

(1973) (citing *Rochin* for principle that "conduct of law enforcement officers [may be] so

outrageous that due process principles would absolutely bar the government from invoking

judicial process to obtain a conviction").

Defendants Diamond and Henderson argue that Owuor cannot litigate in this forum

issues already decided by the court in his criminal case and that collateral estoppel therefore

bars Owuor's claim that Diamond and Henderson subjected him to excessive force during

the altercation in the jail hallway.  *Doc. No. 50 at 9-13*.  "Under collateral estoppel, once a

---

[11] "As the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context."  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.25 (11th Cir. 2009).

court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Under the federal standard, there are four elements necessary to the application of collateral estoppel: (1) the issue at stake in the present action is identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior action; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *I.A. Durbin, Inc. V. Jefferson National Bank*, 793 F.2d 1541, at 1549 (11th Cir. 1986); *see also Montana v. United States*, 440 U.S. 147, 153 (1979); *Dixie National Life Ins. Co. v. McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989).

In his instant complaint, Owuor alleges that defendants Diamond and Henderson violated his rights under the Due Process Clause of the Fifth Amendment by using excessive force that amounted to physical torture during the altercation in the jail hallway. Owuor had a full and fair opportunity to litigate this claim in his criminal case. *See I.A. Durbin, Inc.*, 793 F.2d at 1549. The factual and legal issues underlying the claim were fully litigated in the resolution of Owuor's pretrial motion to dismiss the indictment and his motion to suppress his statements.[12] In his motion to dismiss the indictment, Owuor argued that his

---

[12] Owuor was represented by counsel throughout his criminal proceedings.

(continued...)

prosecution was barred under the Due Process Clause of the Fifth Amendment because Diamond and Henderson had "engaged in misconduct that is so shocking that it violates the universal sense of justice and fundamental fairness mandated by the due process clause." *Case No. 2:08cr149-WKW-TFM, Doc. No. 30 at 1*. More particularly, Owuor alleged that, during the altercation in the jail hallway, Diamond and Henderson "tortured" him, broke his index finger, dislocated his shoulder, and tore his shoulder muscle. *Id*. In his suppression motion, Owuor also claimed that his statements were the product of physical force, "obtained during the agents' torture of the defendant." *Doc. No. 29 at 7*. At Owuor's request, the court held an evidentiary hearing at which Owuor presented witnesses and other evidence, cross-examined the Government's witnesses, and made legal arguments. After the evidentiary hearing, Judge Moorer recommended that Owuor's motions be denied. Factually, Judge Moorer found that the agents "used no more force [than] necessary to subdue Owuor." *Id. at 15*. Legally, Judge Moorer concluded that the agents' conduct did not violate the Due Process Clause. *Id. at 14*. Judge Watkins conducted a de novo review of the record, including a de novo review of the videotape of the altercation in the jail hallway, and adopted Judge Moorer's findings on Owuor's excessive force claims. *See Doc. No. 56*. Judge Watkins's Memorandum Opinion and Order contained findings indicating that the agents' use of force was in response to resistance and aggression on the part of Owuor. *Id. at 18-19*. More to the point, Judge Watkins specifically held that "[t]here is no

_____

[12](...continued)

16

evidence of conduct that is so rare and outrageous as to violate 'fundamental fairness, shocking to the universal sense of justice mandated by the due process clause of the fifth amendment.'" *Id. at 17-18.*

The court's determination of Owuor's excessive force claim was a critical and necessary part of his criminal case. *See I.A. Durbin, Inc.*, 793 F.2d at 1549. In raising this constitutional claim in his pretrial motion to dismiss the indictment and in his motion to suppress his statements, Owuor specifically sought dismissal of the indictment based on the allegation that the ICE agents had used excessive force that amounted to physical torture, in violation of the Fifth Amendment's Due Process Clause. Whether the agents used excessive force was central to the determination of whether the motion to dismiss the indictment would be granted. Owuor's criminal case would not have gone forward if this issue was resolved in his favor. The legal conclusions of Judge Moorer and Judge Watkins that defendants Diamond and Henderson did not use excessive force in violation of the Fifth Amendment's Due Process Clause – and the factual findings underlying those legal conclusions – were a specific rejection of Owuor's version of events, so that Owuor cannot again litigate the issue of the use of excessive force during the altercation in the jail hallway. The four elements necessary to the application of collateral estoppel are satisfied here, and Owuor is barred from relitigating his excessive force claim. Therefore, summary judgment is due to be granted to defendants Diamond and Henderson as to this claim.

## E.        The Other Defendants

Also named as defendants in Owuor's complaint, as amended, are A.J. Taylor, supervisory correctional officer for the Montgomery, Alabama, Municipal Jail; the City of Montgomery, Alabama; and Bobby Bright, former mayor of Montgomery.[13]  Owuor's theory of liability as to these defendants depends on, among other things, proof of a link between the alleged deliberate indifference of these defendants and the alleged use of excessive force, in violation of the Fifth Amendment's Due Process Clause, by federal defendants Diamond and Henderson.   However, establishing the deprivation of a constitutional right is an essential initial hurdle in any 42 U.S.C. § 1983 or *Bivens* analysis.  *See Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir.1996); *see also Bivens*, 403 U.S. at 388.  Because, as previously indicated, Owuor cannot demonstrate the unconstitutional use of excessive force by defendants Diamond and Henderson, he cannot establish any attendant liability as to defendants Taylor,[14] Bright, and City of Montgomery.  Therefore, summary judgment is due to be granted to these defendants.

## F.        Retaliatory Prosecution

Owuor contends that federal defendants Diamond and Henderson brought criminal

---

[13] These defendants at all pertinent times were state actors or agents.  Therefore, Owuor's claims as to these defendants fall under 42 U.S.C. § 1983.  Of course, the rules for liability and responsibility under § 1983 and *Bivens* are the same.  *See Butz*, 438 U.S. at 500.

[14] Owuor does not allege that Taylor participated in the altercation in the jail hallway that led to his injuries.  Instead, he alleges that Taylor acted with deliberate indifference in allowing defendants Diamond and Henderson to use excessive force against him.

18

charges against him, leading to his indictment, in retaliation for his filing of a federal tort claim against them. *Doc. No. 1 at 3.* To state a retaliatory prosecution claim, a plaintiff must plead and prove an absence of probable cause for pressing the underlying criminal charge. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006); *see also Rehberg v. Paulk*, 611 F.3d 828, 848-49 (11th Cir. 2010). Owuor fails to set forth facts establishing an absence of probable cause for his prosecution. Moreover, he was indicted for and convicted of the criminal charges initiated by Diamond and Henderson. Therefore, he has not – and cannot – state a successful retaliatory prosecution claim. *See Hartman*, 547 U.S. at 265–66; *see also McCarthy v. Mayo*, 827 F.2d 1310, 1316–17 (9th Cir. 1987) (explaining that a grand jury determines whether probable cause exists in a federal prosecution, and affirming dismissal of malicious prosecution claim in light of grand jury's determination of probable cause); *Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2nd Cir. 1986) (plaintiff's conviction of the criminal charge establishes probable cause for his arrest and prosecution as a matter of law). Furthermore, Owuor fails to demonstrate that the prosecution was initiated against him in retaliation for his exercise of a constitutionally protected right. *See Hartman*, 547 U.S. at 259-61. For these reasons, summary judgment is due to be granted to defendants Diamond and Henderson as to this claim.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Owuor's claims against defendant U.S. Department of Homeland Security be

dismissed for lack of subject matter jurisdiction.

2.  The motions for summary judgment filed on behalf of defendants Diamond and Henderson be GRANTED and the claims asserted against these defendant be DISMISSED with prejudice.

3.  The motions for summary judgment filed on behalf of defendants Taylor, Bright, and City of Montgomery be GRANTED and the claims asserted against these defendant be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before October 18, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The  parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.  Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). See also *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as

binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of October, 2012.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE